UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DOUGLAS HAMBLIN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Cause No. 1:14-cv-1081-WTL-DML |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Douglas Hamblin requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.    PROCEDURAL HISTORY

Douglas Hamblin protectively filed for DIB on March 16, 2011, alleging he became disabled on October 1, 2010, primarily due to attention deficit disorder, depression, a learning disability, fatigue, high blood pressure, and bowel problems. His application was denied initially on November 1, 2010, and again upon reconsideration on September 6, 2011. Following the denial upon reconsideration, Mr. Hamblin requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A live hearing, during which Mr. Hamblin was represented by counsel, was held before ALJ Ronald Jordan on January 29, 2013. The ALJ issued his decision denying Mr. Hamblin's application on February 20, 2013, and the Appeals Council

denied Mr. Hamblin's request for review on May 23, 2014. After the Appeals Council denied review of the ALJ's decision, Mr. Hamblin filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning . . . [and] build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III.   BACKGROUND

The evidence of record is aptly set forth in the parties' briefs and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### IV.   THE ALJ'S DECISION

The ALJ determined at step one that Mr. Hamblin had not engaged in substantial gainful activity at any time material to his decision. At steps two and three, the ALJ concluded that Mr. Hamblin had the severe impairments of "borderline intellectual functioning, depression, and anxiety," R. at 22, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Mr. Hamblin had the residual functional capacity ("RFC") to "perform a full range of work at all exertion levels, but with the following non-exertional limitations: the claimant is limited to work involving only simple,

3

repetitive tasks." *Id.* at 24.  Given that RFC, the ALJ determined that Mr. Hamblin could perform his past relevant work as a packer.  Alternatively, at step five the ALJ determined that Mr. Hamblin could also perform a range of unskilled work that exists in the local and national economy, including a bagger/cart pusher, a janitor, and a grounds keeper.  Accordingly, the ALJ concluded that Mr. Hamblin was not disabled as defined by the Act.

## V.     DISCUSSION

In his brief in support of his Complaint, Mr. Hamblin alleges the ALJ:  1) erred in rejecting the opinions of his treating physician; and 2) erred in his Step 5 determination.  Both arguments are addressed below.

### A.  Treating Physician

Mr. Hamblin argues that the ALJ's RFC assessment was flawed because he failed to give proper weight to the opinion of his treating physician, Dr. Kent Erb.  A recent Seventh Circuit opinion described what is commonly referred to as "the treating physician rule":

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record.  If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it.  But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted).  The Seventh Circuit has held that "'[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'"

4

*Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2))).

Dr. Erb provided a statement of claimant or other person on January 18, 2012. R. at 518. He opined that Mr. Hamblin should qualify for disability due to his "chronic history of anxiety, depression, full-scale IQ of 85, reading disability, and attention-deficit hyperactivity disorder with resultant impairment of concentration/executive function, and errors in reading and spelling." *Id.* The ALJ gave this opinion limited weight, noting the following:

> The physician is a primary care provider rather than mental-health professional and the impairments on which the physician has based his opinion are mental; the statement is inconsistent with other medical opinions of record, notably the statement set forth by treating neurologist Dr. Vogel that the claimant could not be diagnosed with attention-deficit hyperactive disorder; the rationale that the claimant has an impairment in concentration, cognitive function, and errors in reading and spelling are not founded in the treating records of Dr. Erb or elsewhere in the objective record aside from the claimant's subjective statements; the physician has conservatively treated the claimant's anxiety and depression with prescriptive medications; the claimant has not been treated for attention-deficit hyperactivity disorder symptoms alleged; and the full-scale IQ of 85 is not consistent with the impairments noted by Dr. Erb, in fact, this IQ score is higher than noted by the psychological consultative examiners, who do not note impairments of such severity as Dr. Erb; furthermore, there is a complete lack of objective findings that would support the claimant is physically limited as the physician opines, or that due to his impairments he would miss three workdays per month.

*Id.* at 29.

Dr. Erb also provided a physical capacity statement in January 2012, opining that Mr. Hamblin had a "history of rectal problems and spastic colon that causes significant abdominal pain and occasional incontinence." *Id.* at 518. The ALJ gave this opinion little weight, noting the following: "there is a lack of evidence that Dr. Erb has either diagnosed or treated the claimant for such impairments, or that claimant has reported symptoms associated with such impairments subsequent to one occasion in January 2012 . . . furthermore . . . objective [colonoscopy] testing

5

of the claimant's colon was unremarkable." *Id.* at 29. The ALJ concluded that Dr. Erb's statements were overly broad, unsupported by objective evidence, and exaggerative.

The ALJ gave the opinion of Dr. Bakdalsh, a state agency examiner, "significant weight, as it is supported by his findings in examining the claimant and by the record as a whole . . . [and] the examiner's assessment is consistent with the medical opinion of the state consultant." *Id.* at 30. Likewise, the ALJ gave the opinion of Dr. Poupeney, another state agency examiner, "significant weight, as it is consistent with the record as a whole, consistent with the findings noted in the consultative support [and] consistent with the opinion expressed by the State agency psychiatric consultant." *Id.* The ALJ also gave "the State agency medical consultant's and State agency psychiatric consultant's opinions . . . significant weight" as they were supported by the record as a whole and remained "consistent with the evidence received at the hearing level." *Id.*

The Court disagrees with Mr. Hamblin that the reasons the ALJ gave in assigning "little weight" to his treating physician's opinions are insufficient. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer good reasons for declining to do so.") (internal quotation marks omitted). The Court believes that the ALJ's decision provides "specific reasons for the weight given to the treating source's medical opinion supported by the evidence in the case record." Social Security Ruling ("SSR") 96-2p. The ALJ gave specific examples of how Dr. Erb's medical opinion was insufficiently supported by the record as a whole, and he provided well-supported contradicting evidence in the form of medical opinions from the state agency examiners, Drs. Bakdalsh and Poupeney. In all, the Court finds that the ALJ carefully considered Mr. Hamblin's treating physician's opinions, assigned his opinions appropriate weight, and supported that determination with sound reasoning.

6

## B. Step Five Determination

Mr. Hamblin's second argument is that the ALJ erred at Step Five because he gave an incomplete hypothetical to the Vocational Expert ("VE") at the hearing. Specifically, he argues that the ALJ failed to account for his moderate deficiencies in concentration, persistence or pace.[1] Pl.'s Br. at 4-5. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). The Court disagrees and finds that the RFC assessment and the hypothetical given to the VE fully account for Mr. Hamblin's mental limitations.

On April 19, 2011, Mr. Hamblin underwent a mental RFC assessment performed by Dr. Amy S. Johnson. Dr. Johnson found that Mr. Hamblin was "moderately limited" in his ability to understand, remember, and carry out detailed instructions, his ability to maintain attention and concentration for extended periods, and his ability to sustain an ordinary routine without special supervision. R. at 437. Mr. Hamblin was noted to be "not significantly limited" in all other areas. *Id*. at 437-38. Dr. Johnson went on to opine that "[t]he clmt is capable of performing SRT [simple, repetitive tasks] on a sustained basis w/o special considerations." *Id*. at 439. At the January 29, 2013, hearing, therefore, the ALJ posited, in part, this hypothetical to the VE: "due

---

[1] Mr. Hamblin notes that the ALJ found that he had moderate limitations in concentration, persistence, and pace, citing to page 23 of the Record. These page contains the ALJ's Step Three determination. It is true that the ALJ found that Mr. Hamblin had moderate difficulties with concentration, persistence, and pace in evaluating whether he met the requirements of paragraph B at Step Three; this, however, is not an RFC assessment. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the ALJ noted this in his decision. *See* R. at 24.

to psychological impairments [the hypothetical individual] is limited to simple, repetitive tasks requiring no independent judgment regarding the primary work process . . . [and the] work goals from day to day should be static and predictable to the employee." *Id*. at 64. The VE then identified jobs that Mr. Hamblin could perform.

Thus, the hypothetical given to the VE accurately encompassed Mr. Hamblin's limitations. Here, the ALJ went beyond limiting Mr. Hamblin to "simple, repetitive tasks" and imposed other restrictions, fully compatible with his mental limitations found by Dr. Johnson. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"); *see also Miliken v. Astrue*, 397 Fed. App'x 218, 221-22 (7th Cir. 2010) ("[T]he ALJ's hypothetical to the VE was limited to unskilled work and thus incorporated Dr. Cools's assessment that given Milliken's mental limitations, she could still perform unskilled work. Accordingly, we conclude that the ALJ adequately accounted for Milliken's limitations in concentration, persistence and pace."). In all, the Court finds no reversible error with the hypothetical given to the VE.

## VI.   CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate reasons for his decision, and the decision is supported by substantial evidence in the record. The decision of the Commissioner is therefore **AFFIRMED**.

SO ORDERED: 6/9/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

8